UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCOTT WILLIAMS | CIVIL ACTION |
| VERSUS | NO: 2:24-cv-120 |
| COMMISSIONER OF SOCIAL SECURITY | SECTION: T (4) |

## ORDER AND REASONS

Before the Court is Claimant's, Scott Williams, Objection to the Magistrate Judge's Report and Recommendation affirming the Commissioner of Social Security's decision to deny Claimant's application for Disability Insurance Benefits and Supplemental Security Income under Title II of the Social Security Act, 42 U.S.C. § 1382(c) ("the Act"). R. Doc. 17. For the following reasons, the Court **DENIES** the Objection and **AFFIRMS** the decision of the Commissioner of Social Security.

## BACKGROUND

Claimant was born in 1982 and was 37 years old on his amended alleged disability onset date. Tr. 14, 27, 213, 233, 240. He thus qualifies as a "younger individual," aged 18-49, under the Act. R. Doc. 8 at 31, Tr. 27. He graduated from high school and had previous employment as an administrative clerk and an automobile service station attendant. Tr. 27, 256; Tr. 27, 57, 256-257, 263-270. Claimant alleges he suffers from Generalized Anxiety Disorder ("anxiety"), depression, substance use disorder, and Attention-Deficit/Hyperactivity Disorder ("ADHD"). *See* Tr. 16, Finding 3.

Claimant's amended disability onset date is April 1, 2020. Tr. 27. Defendant, the

1

Commissioner of Social Security, ("the Commissioner") denied Claimant's disability application initially and upon reconsideration on February 22, 2023. Tr. 61-94. A hearing was held before an administrative law judge ("the ALJ") on June 15, 2023 ("the Hearing"). Tr. 198-211. After the Hearing, the ALJ issued an unfavorable decision on September 6, 2023, through the required five Step Sequential Evaluation Process. Tr. 14-29.

At Step 1, the ALJ found Claimant had not engaged in substantial gainful activity since the date of his amended application. Tr. 16, Finding 2. At Step 2, the ALJ determined Claimant had the following severe impairments: anxiety with panic, depression, and substance abuse disorder. Tr. 16-17, Finding 3. The ALJ concluded that Claimant's ADHD is, at most, a non-severe impairment. *Id.* At Step 3, the ALJ concluded Claimant does not have impairments that meets or medically equal the severity of listed impairments—notably Listing 12.06 recognized anxiety and obsessive-compulsive disorders ("the Listing"). Tr. 17-19, Finding 4.

Next, before going to Step 4, the ALJ addressed Claimant's Residual Functional Capacity ("RFC"). The ALJ found that, consistent with his RFC, Claimant has a capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can understand, remember, and apply simple, routine instructions and make only simple decisions; must avoid fast-paced quota-based work; can occasionally interact with supervisors and coworkers, but may have no more than incidental interaction with the general public; can adapt to occasional changes in the work setting; and must avoid driving as a function of work. Tr. 19-27, Finding 5. At Step 4, the ALJ determined Claimant is unable to perform his past relevant work. Tr. 27, Finding 6. To conclude, at Step 5, the ALJ found Claimant could perform jobs that exist in

2

significant numbers in the national economy. Tr. 28, Finding 10. Based on the Vocational Expert's ("VE") testimony, Claimant would be able to perform the requirements of select occupations, including window cleaner, floor waxer, and wall cleaner. *Id.* The ALJ therefore concluded Claimant is not disabled under the Act and denied Claimant's application. Tr. 28, Finding 11. Claimant filed a request for review of the ALJ's decision, and the Appeals Council denied this request on November 20, 2023. Tr. 1-6.

Claimant then sought judicial review under 42 U.S.C. § 405(g). R. Doc. 1. He maintained that the ALJ erred at two Steps of the Sequential Review Process. R. Doc. 12. First, he claimed the ALJ erred at Step 3 because the ALJ allegedly only offered a boilerplate conclusion that Claimant's limitations did not medically equal Listing 12.06—recognized anxiety-related and obsessive-compulsive disorders. R. Doc. 12 at pp. 4-7; *see also* 20 CFR § Pt. 404, Subpt. P, App. 1. He also alleged the ALJ erred on Step 5 because he maintains that the ALJ did not properly incorporate some of Claimant's alleged limitations at the Hearing in a hypothetical posed to the VE. Claimant argues the ALJ recognized his moderate limitations in the "paragraph B" criteria but did not incorporate such limitations in the hypothetical at Step 5—whether Claimant can perform work that exists in significant numbers in the national economy. *See* R. Doc. 12 at pp. 6-9.

The Magistrate Judge's Report and Recommendation rejected Claimant's challenge and affirmed the Commissioner's decision. R. Doc. 16. The Magistrate Judge first concluded that the ALJ's later reasoning that Claimant's symptoms were not fully consistent with the record evidence was substantial evidence to conclude that Claimant's impairments did not medically equal Listing 12.06. R. Doc. 16 at pp. 10-11. The Magistrate Judge determined Claimant's cited cases are

3

inapposite because they were issued prior to the March 2017 amendment to SSR 17-2p. That amendment states that, if an ALJ determines that previously received evidence "does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence" on medical equivalence at Step 3. *Id.*; 2017 WL 3928306, at *4. The Magistrate Judge later held that the ALJ did not err on Step 5. Because the ALJ properly considered and incorporated Claimant's recognized limitations in the RFC analysis and his stated hypothetical, the Magistrate Judge concluded there was substantial evidence to hold Claimant was not disabled at Step 5. R. Doc. 16 at pp. 15-16.

Claimant now objects to the Report and Recommendation on two grounds. First, Claimant takes issue with the Magistrate Judge's reliance on SSR 17-2p. R. Doc. 17 at pp. 2-4. He claims that under *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 at 2261, 2273 (2024) SSR 17-2p is unlawful or should otherwise be disregarded. R. Doc. 17 at p. 4. Claimant submits that the ALJ must instead separately articulate why his limitations do not medically equal a listing in Step 3. *Id.* at pp. 2-4. Lastly, Claimant re-argues that the ALJ's failure to incorporate alleged additional limitations in a hypothetical to the VE constitutes reversable error. *Id.* at pp. 6-7.

## **LAW & ANALYSIS**

### 1. **Legal Standard**

When a party objects to a magistrate judge's report and recommendation, the district court must conduct a *de novo* review for the objected to portions. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Frivolous, conclusory, or general objections need not be considered by the district court. *See Battle v. U.S. Parole*

*Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Unobjected to portions are reviewed for clear error. *Wilson*, 864 F.2d at 1221.

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence of a disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Chrisner v. Asture*, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

An ALJ must follow the five-Step Sequential Evaluation Process for determining disability. Step 1: is the claimant currently working? Step 2: does the claimant have a medically severe impairment? Step 3: does the impairment meet or equal an Appendix 1 listing for presumptive disability? Step 4: does the impairment prevent the claimant from performing past relevant work? Step 5: does the impairment prevent the claimant from performing any other work? *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)–(f) 20 C.F.R. §§ 404.1520)).

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884,

at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)); *see also Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009) ("The federal 'harmless-error' statute ... tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'"). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Wilder*, 2014 WL 2931884, at *5 (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## 2. <u>The Court Identifies No Reversible Error at Step 3</u>

In Step 3, the ALJ must determine whether the impairments meet or medically equal the criteria of a relevant listing in Appendix 1. 20 C.F.R. § 404.1520(d). Listing 12.06 is the appropriate listing for an anxiety disorder. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. A claimant's mental impairments must satisfy paragraphs A and B, or A and C to be *per se* disabled. *Id.* § 12.00(A)(2); *Whitehead v. Colvin*, 820 F.3d 776, 780–81 (5th Cir. 2016).

"Paragraph B" criteria, referred to as the Psychiatric Review Technique ("PRT"), considers four areas of mental functioning: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)–(4), 12.04(B)(1)–(4), 12.06(B)(1)–(4); *see also Owen v. Astrue*, 2011 WL 588048, at * 14 (N.D. Tex. Feb. 9, 2011). A mental impairment is generally considered medically equal to a listing where

there is an "extreme" limitation in one, or "marked" limitation in two of the four areas of mental functioning. *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *2 (5th Cir. July 12, 2023) (summarizing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d)–(e)). An extreme limitation means that the claimant is not able to function in the respective area of mental functioning independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(e). A marked limitation means that functioning independently, appropriately, effectively, and on a sustained basis in the respective area is seriously limited. *Id.* § 12.00(F)(2)(d). An ALJ must "use all of the relevant medical and non-medical evidence in [the claimant's] record to evaluate [the disorder]." *Id.* § 12.00(F)(3)(a).

"Paragraph C" requires a showing of a "serious and persistent" mental disorder. *Id.* § 12.00(B)(5). A claimant must show a medically documented history of the existence of the disorder over a period of at least 2 years. Additionally, he must produce evidence of both (1) "Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [claimant's] mental disorder…[and] (2) Marginal adjustment, that is, [claimant] ha[s] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." *Id.* § 12.06(C)(1)-(2).

The ALJ uses the PRT to assess whether a mental impairment satisfies the requirements of a specific listing, i.e., Listing 12.06. Claimant's functional limitations in the four areas of mental functioning are assessed on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4); *see* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00F(2)(b). An ALJ must document

this decision by showing the history, examinations, and findings, and he must be specific about each functional area. *See* 20 C.F.R. § 404.1520a(e)(4). An ALJ's evaluation of a mental disorder's severity consists of evidence from medical sources, people who know the claimant, school, vocational training, work, work-related programs, and longitudinal medical evidence.[1] *See* 20 C.F.R. Pt. 404, Subpt. P, app. § 12.00C(1)-(5).

Here, the ALJ considered all PRT factors and found with substantial evidence that Claimant's impairments did not meet paragraph B and C criteria for Listing 12.06. Each of paragraph B criteria are discussed below.

**Understanding, remembering, or applying information**. The ALJ concluded that the Claimant has a moderate limitation. Tr. 17-18. The ALJ noted that Claimant could adequately follow written and spoken instructions, has a normal memory, no limitations in understanding and remembering simple and detailed instructions, and an "average intellect and good fund of knowledge." *Id.* The ALJ considered Claimant's limitations and indicated his "anxiety could certainly have some impact upon his ability to concentrate, thereby affecting his ability to understand, remember, or apply information at times." *Id.* Even accepting these limitations, because Claimant can perform various simple tasks such as personal care activities, the ALJ found no more than a moderate limitation. *Id.* The ALJ based his conclusion on the entire record, including multiple medical sources—outpatient psychiatry treatment, the Claimant's therapist, and two consulting psychologist reports. *See id.* The ALJ's findings were thus based on substantial

---

[1] Courts have considered longitudinal medical evidence to encompass medical reports from treating sources on the same condition over a significant period of time. *See, e.g.*, *LaMonte v. Colvin*, No. CIV.A. 13-4836, 2014 WL 4450362, at *3 (E.D. La. Sept. 10, 2014)

evidence and are consistent with the Listing's description. *See* 20 C.F.R. Pt. 404, Subpt. P, app. § 12.00C(1)-(5); 12.00(E)(1).

**Interacting with others.** The ALJ concluded Claimant has a moderate limitation. Tr. 18. The ALJ based this conclusion on multiple sources, including Claimant's self-report that he has "no problems getting along with others," the treating and examining physicians' evaluations—which reported Claimant to be cooperative with normal behavior, normal/intelligible speech, and normal effect, Claimant's interactions with his neighborhood friends, and attendance at Saints' games. *Id.* Although the ALJ did note that the medical evidence suggests limitations from Claimant's anxiety treatment, because Claimant had a good response to medication, this only warranted a moderate limitation. These ALJ findings are based on substantial evidence consistent with the Listing's description. *See* 20 C.F.R. Pt. 404, Subpt. P, app. § 12.00C(1)-(5); 12.00(E)(2).

**Concentrating, Persisting, or Maintaining pace.** The ALJ also determined Claimant has a moderate limitation in this area. The ALJ considered but concluded that a March/June 2023 evaluation, which denoted Claimant's "significant ADHD problem," was not indicative of Plaintiff's symptoms because much of this testing consisted of self-reports. Tr. 18. Additionally, Claimant's treating source/psychiatrist never noted any defects in attention/concentration nor diagnosed him for ADHD. *Id.* Accordingly, the ALJ concluded Claimant had an ability to sustain an ordinary routine/regular attendance at work because Claimant had enough attention to do simple tasks including driving, managing finances, cleaning, doing laundry, mowing the lawn, and preparing simple meals. *Id.* A consultive psychologist also noted that Claimant's tested attention and concentration were within functional limits. *Id.* Therefore, the ALJ's findings of a moderate

9

limitation are based on substantial evidence consistent with the Listing's description. *See* 20 C.F.R. Pt. 404, Subpt. P, app. § 12.00C(1)-(5); 12.00(E)(3).

**Adapting or managing oneself.** The ALJ also concluded that Claimant had a moderate limitation for this final factor. Tr. 18-19. To justify this conclusion, the ALJ noted that Claimant can adapt and manage himself well enough to perform various personal care activities, manage finances, and spend time with others in person and on the phone. *Id.* Claimant was still able to perform these activities with the current psychiatry treatments. *Id.* The ALJ based his findings on multiple sources, including medical treatments, self-reporting, and physician evaluations. *See id.* Accordingly, these findings are based on substantial evidence consistent with the Listing's description. *See* 20 C.F.R. Pt. 404, Subpt. P, app. § 12.00C(1)-(5); 12.00(E)(4).

The ALJ also addressed the "paragraph C" criteria with specificity. The ALJ concluded Claimant's limitations failed to satisfy paragraph C. Tr. 19. On marginal adjustment, the ALJ noted Claimant had no emergency room treatment or inpatient hospitalization due to his mental impairments, a good response to medication, and was able to adapt well enough to perform various personal care activities. *Id.*

Turning to Claimant's objections. First, contrary to Claimant's assertion, the ALJ's decision on medical equivalence is based on substantial evidence. The ALJ's paragraph B analysis assessed the "severity of the claimant's mental impairments, considered singly and in combination, [and concluded they] do not meet or *medically equal* the criteria of listings 12.04, 12.06, 12.11." Tr. 17. "In making this finding" the ALJ considered Claimant's limitations in the "paragraph B" criteria. *Id*. Indeed, the ALJ specifically noted that "the limitations identified in the 'paragraph B

10

criteria'…are used to rate the severity of mental impairments at Steps 2 and 3 of the sequential evaluation process." Tr. 19. In other words, the paragraph B analysis arguably considered with specificity and record citations whether Claimant's limitations both met or *equaled* the Listings.

Regardless, the Sequential Evaluation process does not require the ALJ to analyze separately whether a claimant's limitations medically equal a listing in Step 3. If the ALJ later articulates why Claimant's impairments do not render him sufficiently disabled, no further analysis is required. SSR-17p provides that:

> If an adjudicator at the hearings or [Appeals Council] level believes that the evidence *already received in the record* does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is *not required to articulate specific evidence* supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later Step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at Step 3.

Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4 (emphasis added). This district and others have relied on SSR-17p and hold that a general statement that an individual's impairment(s) does not medically equal a listing is sufficient for Step 3 if the ALJ later provides the necessary rationale. *Rixner v. Kijakazi*, No. CV 22-419, 2023 WL 2192951, at *16 (E.D. La. Jan. 25, 2023), *report and recommendation adopted*, No. CV 22-419, 2023 WL 2185715 (E.D. La. Feb. 23, 2023); *See e.g.*, *Montez v. Kijakazi*, No. EP-23-CV-00155-ATB, 2023 WL 8879266, at *5 (W.D. Tex. Dec. 22, 2023) (citing SSR 17-2p, 2017 WL 3928306, at *4 (SSA Mar. 27, 2017)) ("If an adjudicator ... believes that the evidence already received in the record does not reasonably support

a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment."); *Starrett v. Comm'r of Soc. Sec.*, No. 1:23-CV-524 JD, 2025 WL 452390, at *8 (N.D. Ind. Feb. 10, 2025) (because the ALJ "explained in the remainder of her decision why [Claimant's] impairments were not as debilitating as alleged…the Court finds no error in the ALJ's conclusion that [Claimant's] impairments do not meet or equal [a] Listing"); *Audrey G. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-CV-324-JR, 2024 WL 3970787, at *5 (D. Or. Aug. 28, 2024) (subsequent review and detailed assessment of a claimant's medical record and symptoms after Step 3 is substantial evidence to support an ALJ's decision that a claimant's impairments did not medically equal a listing).

Here, the ALJ already considered evidence from multiple sources on Claimant's limitations and properly concluded with record citations that his limitations do not *meet* Listing 12.06. *See* Tr. 17-19. In fact, Claimant concedes this point. R. Doc. 12 at p. 3 n. 1. He only takes issue that the ALJ allegedly failed to address why Claimant's limitations do not medically *equal* Listing 12.06 in Step 3. Claimant however does not explain why his limitations *do* medically equal the Listing. *See generally* R. Doc. 17 at pp. 1-4; *see also Rixner*, 2023 WL 2192951 at * 16 (finding a claimant who failed to explain why the evidence meets or medically equals a listing did not allege a reversible error). At best Claimant's original brief asserts, without authority, that because he has moderate limitations in all PRT factors, such limitations should medically equal Listing 12.06. R. Doc. 12 at p. 4. However, on review under 42 U.S.C. § 405(g), a federal court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for that of the

Commissioner's, even if the evidence weighs against the Commissioner's decision." *Muhleisen v. Soc. Sec. Admin.*, No. CV 23-1064, 2024 WL 139525, at *4 (E.D. La. Jan. 12, 2024) (citing *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018)). So long as the ALJ provides sufficient rationale based on substantial evidence that the Claimant is not disabled, that is enough to support the conclusion that Claimant's limitations do not medically equal Listing 12.06.

The ALJ properly assessed the severity of Claimant's limitations in the RFC analysis and concluded, by consulting the whole record, that the symptoms were not as severe as alleged. Tr. 19-26. The RFC analysis spanned multiple pages and evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms." Tr. 20. The ALJ first assessed Claimant's work history, allegations of disability—including anxiety with panic—and medications. *Id.* He next considered testimony from Claimant's mother, who indicated that Claimant was previously able to perform part-time work for her without issue. *Id.* The ALJ then addressed the medical evidence of record starting in April 2020 through November 2022. Tr. 20-26. The ALJ found Claimant had a determinable impairment of anxiety with panic, depression, and substance use disorder which would reasonably be expected to cause Claimant's alleged symptoms. Tr. 20-21.

Nevertheless, the ALJ noted the record evidence indicated the symptoms were not as severe as alleged. Tr. 20-26. First, the medical evidence showed multiple unremarkable mental status examinations with okay to good mood such that Claimant was able to attend multiple social outings. Tr. 21. Claimant's limitations also improved with time and treatment as by August and November 2022, he conquered his previous objection to crossing the Lapalco Bridge and performed household tasks. *Id.* The ALJ further considered multiple psychological evaluations and

opinions from no fewer than six medical professionals. Tr. 22-26. Notable conclusions in the evaluations include multiple reports of normal attention and concentration, a good overall response to medication, and evidence Claimant can carry out simple tasks. *See id.*

With this extensive analysis, the ALJ thus determined that Claimant's alleged limitations were not consistent with the record because, "despite his anxiety with panic, depression, and substance abuse disorder, the claimant is able to perform a wide range of daily activities, including performing personal care activities independently (grooming, bathing, dressing), preparing simple meals, cleaning, doing laundry, mowing the lawn, driving (but with problems with bridges), watching television, playing video games, doing adult Lego sets, and spending time with others, including hanging out with friends and going to the Saints' games with his mom." Tr. 23. Accordingly, the ALJ concluded Claimant's RFC only had some non-exertional limitations including making only simple decisions, avoiding fast-paced quota work, and incidental interaction with the general public. *Id.*

With this RFC and considering Claimant's age, education, and work experience, the ALJ concluded Claimant was not disabled at Step 5 because he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 28. The ALJ conclusion that Claimant is not disabled, which incorporated the extensive RFC analysis, is based on substantial evidence—"more than a mere scintilla"—and fully assessed Claimant's limitations. In sum, the ALJ's rationale in the RFC that Claimant's limitations are not as severe as alleged is substantial evidence that Claimant's limitations do not medically equal Listing 12.06. *See* Tr. 16-27.

14

Claimant's reliance on *Loper Bright* has no bearing on this case. 144 S.Ct. 2244 at 2273. Federal courts have routinely rejected challenges to the Social Security Administration's authority to weigh medical evidence through the 2017 regulations. *See, e.g.*, *Kimberly M. v. Comm'r of Soc. Sec.*, No. 1:24-CV-527, 2025 WL 449429, at *4 (W.D. Mich. Jan. 8, 2025), *report and recommendation adopted sub nom. Messenger v. Comm'r of Soc. Sec.*, No. 1:24-CV-527, 2025 WL 448784 (W.D. Mich. Feb. 10, 2025); *Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024) (citing *Cross v. O'Malley*, 89 F.4th 1211 (9th Cir. 2024)) (holding the Act "plainly encompass[d] the Commissioner's authority to adopt regulations to govern the weighing of medical evidence" without deferring to the agency's interpretation of the statute). Accordingly, the Court finds no reversible error at Step 3.

### 3.  **The Court Finds No Reversible Error at Step 5**

At Step 5, the burden shifts to the Commissioner to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, VE testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Before going from Step 3 to Step 4, the Commissioner assesses the claimant's RFC. *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017). "The claimant's RFC assessment is a determination of the most the claimant can still do despite ... [his] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id*. (cleaned up); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). "The RFC is used in both Step four and Step five to determine whether the claimant is able to do her past

work or other available work." *Kneeland*, 850 F.3d at 754.

When assessing the RFC, an ALJ must "consider ... all medically determinable impairments," whether "severe" or not. 20 C.F.R. § 416.945(a)(2). The ALJ must consider "all ... relevant medical and other evidence" in the record, including the claimant's "descriptions ... of [his] limitations from [his] impairment(s)" and "any statements about what [the claimant] can still do that have been provided by medical sources." *Id.* § 416.945(a)(3). The ALJ is however not required "to comment on every piece of evidence." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010); *see also Castillo*, 151 F. App'x at 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."). Likewise, the ALJ need not "follow formalistic rules in his articulation" of findings, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (rejecting a claimant's "persistent[ ] argu[ment] that the ALJ's failure to explain his findings ... should constitute reversible error"), but need "only ... build an accurate and logical bridge between the evidence and the final determination." *Price*, 401 F. App'x at 986. Procedural perfection in administrative proceedings is not required. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

To start, Claimant's issue with the Magistrate Judge's definition of a "moderate limitation" is meritless. *See* R. Doc. 17 at pp. 4-6. The Magistrate Judge's order properly identified the definition of a moderate limitation in 20 C.F.R. § 12.00(F)(2). R. Doc. 16 at p. 15 ("20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(F)(2) defines a moderate limitation as the claimant's 'functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.'"). Most importantly, there is no indication the ALJ used any other definitions when assessing Claimant's

limitations. *See* Tr. 15-16, 19-26.

Secondly, the ALJ's written decision reveals that he expressly considered Claimant's limitations in the RFC analysis. As discussed above, the ALJ properly incorporated and considered all relevant medical and non-medical evidence—including an evaluation by Dr. Constantin, the State agency psychologist at the reconsideration level. *See* Tr. 19-26. The ALJ noted that Dr. Constantin evaluated Claimant to have moderate limitations in the four PRT functional factors. Tr. 24. Claimant alleges however that the ALJ did not consider other limitations recognized by Dr. Constantin. R. Doc. 17 at p. 6. But these specific sustained concentration and persistence sub-questions in Dr. Constantin's evaluation were incorporated into the RFC analysis. Tr. 24, 67. These questions "help determine the individual's ability to perform sustained work activities. However, the *actual mental residual functional capacity assessment is recorded in the narrative discussion(s)*, which describes how the evidence supports each conclusion." Tr. 67 (emphasis added). Dr. Constantin considered these questions when fashioning her narrative discussion on Claimant's RFC, noting that "while deficits exist, the consensus of the data suggests the claimant is able to understand, remember, and carry out simple tasks with routine training and supervision. Claimant can relate to supervisors, peers, and customers on a superficial work basis only and would likely do better in settings with minimal social requirements…[and]…can adapt appropriately to a low stress and predictable work situation." Tr. 24, 85.

As discussed above, the ALJ considered Dr. Constantin's evaluation and all other medical and non-medical evidence in the records for his RFC determination. *See* Tr. 19-26. Indeed, the ALJ found Dr. Constantin's opinion only "partially persuasive," because the record evidence

indicated Claimant had *more* limitations than Dr. Constantin suggested. Tr. 24-25. The ALJ concluded Claimant's RFC is that "he can understand, remember, and apply simple, routine instructions and make only simple decisions; must avoid fast-paced quota-based work; can occasionally interact with supervisors and coworkers, but may have no more than incidental interaction with general public (i.e., no sustained substantive interaction with the general public); can adapt to occasional changes in work setting; and must avoid driving as a function of work (due to his fear of bridges)." Tr. 19-26, Finding 5. The ALJ's hypothetical posed to the VE at the Hearing incorporated these limitations.

> ALJ: "For my first hypothetical, please assume an individual at the same age, education and work history as the claimant, the individual can perform the full range of work at all exertional levels. He has the following limitations. He can understand, remember and apply simple, routine instructions and make only simple decisions. He must avoid fast paced quote based work. He can occasionally interact with supervisors, coworkers and the general public. He can adapt to occasional changes in work setting and he must avoid driving as a function of work. Would such an individual be able to perform the claimant's past work.

> VE: No

> ALJ: Would there be any other work available in the national economy for an individual with that RFC?

> VE: Yes."

Tr. 58. Even for a hypothetical that added *more* limitations, the conclusion does not change.

> ALJ: "If I were to alter that hypothetical with regard to the social interaction…it's still occasionally interact with supervisors and coworkers but I'm going to the interaction to the general public so that it would be no more than incidental interaction with the general public and by that, I mean *no sustained substantive interaction* with the general public. Would that alter your prior opinion?

> VE: No."

18

*Id.* (emphasis added).

Thus, there was no need to explicitly mention such sub questions in the ALJ's hypothetical because they are not Claimant's limitations. The questions help guide the ALJ's determination of the Claimant's RFC. *See* Tr. 68. Given that the ALJ properly considered the record evidence and articulated hypothetical questions that reasonably incorporated the restrictions that he recognized in the RFC, the Court finds no reversible error at Step 5. Accordingly,

**IT IS ORDERED** that the Court **DENIES** Claimant's Objections to the Report and Recommendations. R. Doc. 17.

**IT IS FURTHER ORDERED** that the decision of Commissioner of Social Security is **AFFIRMED**.

New Orleans, Louisiana, this 14th day of March 2025.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

19